# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ST. LUCIE COUNTY FIRE DISTRICT FIREFIGHTERS' PENSION TRUST FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRONTIER COMMUNICATIONS CORP., DANIEL MCCARTHY, JOHN M. JURELLER, RALPH PERLEY MCBRIDE, JOHN GIANUKAKIS, DONALD DANIELS, MARY AGNES WILDEROTTER, LEROY T. BARNES, JR., PETER C.B. BYNOE, DIANA S. FERGUSON, EDWARD FRAIOLI, PAMELA D.A. REEVE, VIRGINIA P. RUESTERHOLZ. HOWARD L. SCHROTT, LARRAINE D. SEGIL, MARK SHAPIRO, MYRON A. WICK, III, J.P. MORGAN SECURITIES LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH INC., CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, BARCLAYS CAPITAL INC., MORGAN STANLEY & CO. LLC, MIZUHO SECURITIES USA INC., DEUTSCHE BANK SECURITIES INC., GOLDMAN, SACHS & CO., AND UBS SECURITIES LLC.<br><br>Defendants. | Civ. A. No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED<br><br>**ECF CASE** |

Plaintiff St. Lucie County Fire District Firefighters' Pension Trust Fund ("Plaintiff" or "St. Lucie Firefighters"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based on the facts alleged below, which are predicated upon, *inter alia*, a review of relevant filings made with the Securities and Exchange Commission ("SEC"), press releases and reports, and an investigation undertaken by Plaintiff's counsel.

Plaintiff believes that the allegations are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## INTRODUCTION

1.      This action is brought on behalf of a class consisting of all persons, other than the defendants named herein, who: (i) purchased or otherwise acquired Frontier Communications Corp. ("Frontier" or the "Company") securities between February 6, 2015, and May 2, 2017, inclusive (the "Class Period"); and/or (ii) purchased or otherwise acquired the common or preferred stock of Frontier either in or traceable to the Company's offerings of common and preferred stock conducted on or about June 10, 2015, which included shares sold pursuant to an overallotment option granted by Frontier to certain underwriters (the "Offerings"), and were damaged thereby.

2.      Frontier is a national telecommunications provider, with services including internet, phone, and TV for retail consumers and businesses.  Over the past decade, Frontier has engaged in an acquisition-based growth strategy predicated on purchasing millions of customers and related telecommunications infrastructure from major national telecommunications providers such as AT&T and Verizon.

3.      On February 5, 2015, Frontier announced that it would pay $10.5 billion to acquire Verizon's wireline operations in California, Texas, and Florida—its largest-ever acquisition (the "CTF Acquisition").  The Company represented to investors that Frontier could successfully integrate these acquired customers and infrastructures, and that estimated costs for the integration would be approximately $450 million.

4.      To finance the $10.5 billion acquisition, Frontier registered and commenced concurrent offerings of its common and preferred stock.  Thus, on April 20, 2015, Frontier filed a

Form S-3 registration statement and prospectus with the SEC, registering various securities that it would offer for sale to the public.  Pursuant to that Form S-3, on or about June 10, 2015, the Company sold 150 million shares of Frontier common stock in the Offerings at $5 per share, thereby garnering proceeds of $750 million, before accounting for underwriting discounts and commissions.

5.      Concurrent with the sale of common stock and pursuant to the same registration statement, Frontier also sold approximately 17.5 million shares of Mandatory Convertible Preferred Stock (the "Preferred Stock") at a price of $100 per share, thereby garnering proceeds of approximately $1.75 billion, before accounting for underwriting discounts and commissions.

6.      Pursuant to the Offerings, Frontier granted the offering underwriters a 30-day overallotment option to purchase from Frontier up to an additional 15,000,000 shares of common stock and up to an additional 1,750,000 shares of Preferred Stock, in each case at the same prior public offering price per share.  On or about June 19, 2015, the offering underwriters exercised the overallotment option, and closed the overallotment sale on or about June 24, 2015, generating an additional proceeds of $75 million from sales of common stock, as well as an additional $175 million from sales of Preferred Stock.  In all, during June, 2015, Frontier obtained a total of $2.75 billion from the sale of Preferred Stock and common stock through the Offerings, all pursuant to the same April 20, 2015 registration statement.

7.      Contrary to representations made to investors during the Class Period, including in connection with the Offerings, Frontier did not have the ability to successfully integrate the CTF Acquisition with only $450 million in integration outlays.  In reality, Frontier was not operationally ready to integrate the CTF Acquisition, and would ultimately spend approximately $1 billion in integration expenses.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to: (i) Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5); and (ii) Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§ 77k, 77*l*(a)(2), & 77o).

9.      This Court has jurisdiction over the claims asserted in this Complaint pursuant toSection 27 of the Exchange Act (15 U.S.C. § 78aa), Section 22 of the Securities Act (15 U.S.C. § 77v), and 28 U.S.C. § 1331.

10.      Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa), Section 22 of the Securities Act (15 U.S.C. § 77v), and 28 U.S.C. § 1391(b). Defendant Frontier maintains its corporate headquarters and principal place of business in this District and did so at all relevant times, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District.

11.      In connection with the acts and conduct alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the mails, interstate telephone communications and the facilities of the NASDAQ Stock Market, a national securities exchange.

## PARTIES

12.      Plaintiff St. Lucie Firefighters is a single employer, defined benefit retirement system providing retirement, disability and death benefits on behalf of the firefighters serving Florida's fifth largest fire district covering St Lucie County Florida and the cities of Ft. Pierce, Florida and Port St. Lucie, Florida.  St. Lucie Firefighters purchased Frontier securities during the

Class Period.  Specifically, St. Lucie Firefighters purchased 2,937 shares of Frontier's Preferred Stock either in or directly traceable to the Offerings, as described in the Certification attached hereto, and was damaged thereby.

13.     Defendant Daniel J. McCarthy ("McCarthy") has served at all relevant times as the Company's President and Chief Executive Officer, as well as a member of its Board of Directors.

14.     Defendant John M. Jureller ("Jureller") served as the Company's CFO from January 2013 to November 4, 2016.

15.     Defendant Ralph Perley McBride ("McBride") served as the Company's Chief Financial Officer ("CFO") from November 4, 2016 through the end of the Class Period.

16.     Defendant John Gianukakis ("Gianukakis") has served at all relevant times as the Company's Vice President and Treasurer.

17.     Defendant Donald W. Daniels ("Daniels") has served at all relevant times as the Company's Senior Vice President and Controller.

18.     The defendants referenced above in ¶¶ 13-17 are referred to herein as the "Exchange Act Individual Defendants."

19.     Defendant Frontier is a Delaware Corporation based in Connecticut.  Frontier maintains its principal executive offices at 3 High Ridge Park, Stamford, Connecticut 06905.

20.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") is a Delaware limited liability company with headquarters in New York, NY.  J.P. Morgan is a wholly owned subsidiary of JPMorgan Chase & Co., and an SEC-registered broker-dealer that engages in investment banking activities in the U.S.  J.P. Morgan served as a joint book-running manager for the Offerings.

5

21.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") is a Delaware corporation with its principal place of business in New York, New York.  Merrill Lynch is the Wealth Management division of Bank of America.  Through its subsidiaries, it is a leading global trader and underwriter of securities and derivatives.  Merrill Lynch served as a joint book-running manager for the Offerings.

22.     Defendant Citigroup Global Markets Inc. ("Citigroup") is a New York corporation with its principal place of business in New York, New York.  It is a wholly owned subsidiary and investment banking and financial advisory division of Citigroup, Inc.  It offers equity and debt financing, asset transaction, private equity, underwriting, institutional sales and trading, and mergers and acquisitions advisory services.  Citigroup served as a joint book-running manager for the Offerings.

23.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") is a Delaware limited liability corporation with headquarters in New York, NY.  Credit Suisse operates as an investment bank in the United States.  Its businesses include securities underwriting, sales and trading, investment banking, private equity, alternative assets, financial advisory services, investment research, and asset management.   Credit Suisse served as a co-manager for the Offerings.

24.     Defendant Barclays Capital Inc. ("Barclays") is a Connecticut corporation with headquarters in New York, NY. Barclays operates as a brokerage firm and investment advisor in the United States. Its businesses include brokerage and financial services and securities sales and trading. Barclays served as a co-manager for the Offerings.

25.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") is a Delaware limited liability corporation with headquarters in New York, NY. Morgan Stanley operates as an

investment bank in the United States. Its businesses include wealth management, investment banking, sales and trading, equities valuations, and financial advisory services. Morgan Stanley served as a co-manager for the Offerings.

26.     Defendant Mizuho Securities USA LLC ("Mizuho") is a Delaware limited liability corporation with headquarters in New York, NY. Mizuho operates as an investment bank in the United States. Its businesses include securities underwriting, sales and trading, financial derivatives, and brokerage services. Mizuho served as a co-manager for the Offerings.

27.     Defendant Deutsche Bank Securities (USA) Inc. ("Deutsche Bank") is a Delaware corporation with headquarters in New York, NY. Deutsche Bank operates as an investment bank in the United States. Its businesses include security brokerage services, financial planning, portfolio management, asset allocation, risk tolerance, and pension management services. Deutsche Bank served as a co-manager for the Offerings.

28.     Defendant Goldman, Sachs & Co. LLC ("Goldman Sachs") is a New York limited liability corporation with headquarters in New York, NY.  Goldman Sachs operates as an investment management company in the United States. Its businesses include securities underwriting, sales and trading, investment banking, commodity trading, and investment consulting. Goldman Sachs served as a co-manager for the Offerings.

29.     Defendant UBS Securities LLC ("UBS") is a Delaware limited liability corporation with headquarters in New York, NY. UBS operates as an investment bank in the United States. Its businesses include equities sales and trading, fixed income and treasury products, and brokerage activities. UBS served as a co-manager for the Offerings.

30.     J.P. Morgan, Merrill Lynch, Citigroup, Credit Suisse, Barclays, Morgan Stanley, Mizuho, Deutsche Bank, Goldman, Sachs, and UBS are collectively referred to herein as the "Underwriter Defendants."

31.     The defendants listed in the table below (the "Securities Act Individual Defendants") served, at times relevant to the claims set forth herein as officers and/or directors of the Company and signed (or authorized their signature to be affixed to) the registration statement as directors and/or officers of Frontier in the positions set forth below:

| **Name** | **Position** |
| --- | --- |
| Daniel J. McCarthy | Director, President and Chief Executive Officer (Principal Executive Officer) |
| John M. Jureller | Chief Financial Officer (Principal Executive Officer) |
| Donald Daniels | Senior VP and Controller (Principal Accounting Officer) |
| Mary Agnes Wilderotter | Executive Chairman of the Board |
| Leroy T. Barnes,  Jr. | Director |
| Peter C.B. Bynoe | Director |
| Diana S. Ferguson | Director |
| Edward Fraioli | Director |
| Pamela D.A. Reeve | Director |
| Virginia P. Ruesterholz | Director |
| Howard L. Schrott | Director |
| Larraine D. Segil | Director |
| Mark Shapiro | Director |
| Myron A. Wick, III | Director |

32.     Each of the Securities Act Individual Defendants named herein, either personally or by attorney-in-fact, signed the registration statement filed with the SEC on April 20, 2015.

33.     Each of the Securities Act Individual Defendants, by virtue of his or her management or directorship positions, had the duty to exercise due care and diligence and the duty of full and candid disclosure of all material facts related thereto.  The Securities Act Individual Defendants were required to exercise reasonable care and prudent supervision over the dissemination of information concerning the business, operations and financial reporting of Frontier.  By virtue of such duties, these officers and directors were required to supervise the preparation of and dissemination of the Offering Materials.

34.     All of the Securities Act Individual Defendants were control persons of Frontier within the meaning of Section 15 of the Securities Act by reason of their own involvement in the daily business of Frontier and/or as senior executives and/or directors of Frontier.  The Securities Act Individual Defendants, at the time they held positions with Frontier, were able to, and did, exercise substantial control over the operations of Frontier, including control of the materially false and misleading statements, omissions and course of conduct complained of herein.

35.     It is appropriate to treat all of the Securities Act Individual Defendants as a group for pleading purposes and to presume that the false and misleading information conveyed in Frontier's Prospectus as alleged herein is the collective action of the narrowly defined group of defendants identified above.

36.     As officers, directors and/or controlling persons of a publicly held company and under the federal securities laws, the Securities Act Individual Defendants had a duty (a) to disseminate promptly complete, accurate and truthful information with respect to Frontier; (b) to correct any previously issued statements from any source that had become materially misleading

or untrue; and (c) to disclose any trends that would materially affect earnings and the present and future operating results of Frontier, so that the market price of Frontier's publicly traded securities would be based upon truthful and accurate information.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this lawsuit pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of itself and on behalf of a Class of persons who: (i) purchased or otherwise acquired Frontier securities during the Class Period and/or (ii) purchased or otherwise acquired the common or Preferred Stock of Frontier either in or traceable to the Company's Offerings and were damaged thereby.

38.     Excluded from the Class are the defendants named herein, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

39.     This action is properly maintainable as a class action for the following reasons:

a.     The Class of investors for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable.  Throughout the Class Period, Frontier securities were actively traded on the NASDAQ.  Moreover, 165 million shares of Frontier common stock and 19.25 million shares of Frontier Preferred Stock were sold in the Offerings to hundreds, if not thousands, of investors.  Although the names and addresses of all members of the Class are unknown to Plaintiff at this time, such information is readily obtainable from records maintained by the defendants.

b.        There are questions of law and fact that are common to members of the Class and which predominate over any questions affecting only individual members. The common questions include, *inter alia*, the following:

(1)        Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(2)        Whether Defendants participated in and pursued the common course of conduct complained of herein;

(3)        Whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

c.        The claims of Plaintiff are typical of the claims of other members of the Class, as Plaintiff purchased Frontier securities during the Class Period in or traceable to the Offerings and was damaged thereby, and Plaintiff has no interests that are adverse or antagonistic to the interests of the Class.

d.        Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in litigation of this nature. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

e.        Plaintiff anticipates that there will not be any difficulty in the management of this litigation as a class action.

40.        For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this action and the claims asserted herein. Because of the size of the individual class members' claims, few, if any, class members could afford to seek legal redress individually for the wrongs complained of herein.

## SECURITIES ACT ALLEGATIONS

41.     On April 20, 2015, Frontier filed a Form S-3 registration statement and prospectus with the SEC, registering various securities that it would offer for sale to the public.

42.     On or about June 2, 2015 and June 8, 2015 Frontier filed prospectus supplements with the SEC in conjunction with the Offerings, which were incorporated in the registration statement (referred to collectively as the "Offering Materials").  The prospectus supplements filed in connection with the Offerings (and incorporated in the registration statement) incorporated by reference, among other things, numerous Forms 8-K Frontier filed with the SEC between September 3, 2014 and June 24, 2015, Frontier's quarterly report on Form 10-Q for the quarter ended March 31, 2015 filed on May 7, 2015 ("Fiscal 2015 First Quarter 10-Q"), and the Company's annual report on Form 10-K for the period ended December 31, 2014 filed on February 25, 2015 ("2015 10-K").

43.     The Offering Materials contained materially false or misleading statements and/or omissions.  In particular, each of the prospectus supplements incorporated in the Offering Materials contained the following false and misleading statement:

> [S]ignificant costs related to the transaction, such as legal, accounting, filing, financial advisory, and integration costs that have already been incurred or will continue up to closing [of the CTF Acquisition]. While the Company currently expects that *it will incur approximately $450 million of operating expenses and capital expenditures in total related to acquisition and integration activities in 2015 and 2016 associated with the Verizon Transaction*, the amount of such operating expenses and capital expenditures may increase based on a variety of factors.

44.     The Company's February 5, 2015 Form 8-K current report, incorporated by reference into the Offering Materials, contained a presentation stating that "OpEx and CapEx integration cost [would be] approximately $450 million in 2015/2016."  The same presentation also touted Frontier's "proven track record of successfully integrating acquired properties," and

stated that the "[CTF] transaction leverages Frontier's low cost operating model" and that "Frontier's seasoned integration team will convert California,  Florida and Texas properties onto Frontier systems at close."

45.    The February 5, 2015 Form 8-K also contained a press release issued on February 5, 2015, in which Defendant Wilderotter stated that, "[the to-be acquired CTF] properties are a great fit for Frontier and will strengthen our presence in competitive suburban markets and accelerate our recent market share gains."  The press release also quoted Defendant McCarthy, who stated, "[t]his transaction is an exciting opportunity for Frontier. We are well-positioned to maximize value for our shareholders and create a great experience for new customers. We have … a high level of familiarity with the systems underlying these properties. We plan to flash-cut convert these properties to Frontier's systems as we did in states including West Virginia and Connecticut."

46.    The Company's May 5, 2015 Form 8-K current report, incorporated by reference into the Offering Materials, contained a presentation stating that "Integration and planning process for Verizon acquisition is fully underway," and that the "Verizon Acquisition Enhances Shareholder Value" by, among other things, "significantly enhanc[ing] Frontier competitive position and scale" across areas including "network equipment," "content," and "partnerships." The Form 8-K also contained a press release, in which Defendant McCarthy stated that, "[o]ur integration, conversion and regulatory approval planning have commenced for the Verizon properties and we still expect to close the transaction in the first half of 2016."

47.    The above statements were materially false or misleading because Defendants failed to disclose that Frontier was not in a position to successfully integrate the CTF Acquisition, or to do so for $450 million in integration costs, and was not, as of the time of the Offerings, "well-

positioned" to maximize value for shareholders through a successful integration of the to-be-acquired CTF assets.

48.     The above statements were materially false and misleading at the time they were made.  As a result, the Offering Materials contained material misstatements and omissions as set forth herein.

49.     On November 1, 2016, six months after Frontier claimed it had completed the integration, Defendants disclosed revenue declines, attributed in large part to customer losses related to assets obtained through the CTF Acquisition.  On November 9, 2016, Frontier announced that integration expenses had ballooned to at least $750 million.  On March 1, 2016, Frontier filed its form 10-K annual report with the SEC.  According to the report, integration expenses had grown to a total of approximately $943 million.  On February 27, 2017 and May 2, 2017, Frontier continued to report deteriorating revenues attributed in large part to the loss of customers obtained through the CTF Acquisition.  On these same dates, Frontier also revealed that it had been engaged in an undisclosed "cleanup" of non-paying accounts acquired in the CTF Acquisition, which had negatively impacted its revenues.

## COUNT I

**Against Frontier, the Securities Act Individual Defendants and the Underwriter Defendants for Violations of Section 11 of the Securities Act**

50.     Plaintiff repeats and realleges each and every allegation contained above.

51.     This Count is brought by Plaintiff pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Frontier, the Securities Act Individual Defendants and the Underwriter Defendants, and does not sound in fraud.

52.     The Offering Materials for the Offerings were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements

made not misleading, and concealed and failed adequately to disclose material facts as described above.

53.   The Company is the registrant for the Offerings.  As signatories of the Offering Materials, the Securities Act Individual Defendants were responsible for their contents and dissemination.

54.   As issuer of the shares, Frontier is strictly liable to Plaintiff and to the members of the Class for the misstatements and omissions.

55.   The Underwriter Defendants served as the underwriters for the Offerings and qualify as such according to the definition contained in Section 2(a)(11) of the Securities Act, 15 U.S.C. § 77b(a)(11).   As such, they participated in the solicitation, offering, and sale of the securities to the investing public pursuant to the Offering Materials.

56.   None of the Securities Act Individual Defendants or Underwriter Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Materials were true and without omissions of any material facts and were not misleading.

57.   The Defendants named in this Count issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public that were contained in the Offering Materials, which misrepresented or failed to disclose, *inter alia*, the facts set forth above.  By reasons of the conduct herein alleged, each such Defendant violated Section 11 of the Securities Act.

58.   Plaintiff and other members of the Class acquired Frontier common stock and/or Preferred Stock pursuant to, or traceable to, the defective Offering Materials.

59.     Plaintiff and the Class have sustained damages.  The value of Frontier's common stock and Preferred Stock has declined substantially subsequent to and due to the violations described herein.

60.     At the times they purchased Frontier common stock and/or Preferred Stock, Plaintiff and the other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to Frontier's subsequent announcements.  Less than one year has elapsed from the time that the Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Plaintiff filed this Complaint.  Less than three years have elapsed from the time that the securities upon which this Count is brought were bona fide offered to the public to the time Plaintiff filed this Complaint.

## COUNT II

### Against Frontier and the Underwriter Defendants
### for Violations of Section 12(a)(2) of the Securities Act

61.     Plaintiff repeats and realleges each and every allegation contained above.

62.     This Count is brought by plaintiff pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2), on behalf of all purchasers of Frontier common stock and Preferred Stock in connection with, and traceable to, the Offerings and does not sound in fraud.

63.     Frontier and the Underwriter Defendants were sellers, offerors, and/or solicitors of sales of the securities offered pursuant to the Offering Materials in connection with the Offerings.

64.     The Offering Materials contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.  Frontier and the Underwriter Defendants' actions of solicitation included participating in the preparation of the false and misleading Offering Materials.

16

65.     Frontier and the Underwriter Defendants owed to the purchasers of Frontier common stock and Preferred Stock, including Plaintiff and other class members, the duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials to insure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Frontier and the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the Offering Materials as set forth above.

66.     Plaintiff and other members of the Class purchased or otherwise acquired Frontier securities pursuant to and traceable to the defective Offering Materials.  Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Offering Materials.

67.     Plaintiff, individually and representatively, hereby offers to tender to Frontier and the Underwriter Defendants those securities that Plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon.

68.     By reason of the conduct alleged herein, Frontier and the Underwriter Defendants violated, and/or controlled a person who violated Section 12(a)(2) of the Securities Act.  Accordingly, Plaintiff and members of the Class who hold Frontier securities purchased in the Offerings have the right to rescind and recover the consideration paid for their Frontier shares and, hereby elect to rescind and tender their Frontier securities to Frontier and the Underwriter Defendants sued herein.  Class members who have sold their Frontier common stock and/or Preferred Stock are entitled to rescissionary damages.

69.     Less than three years have elapsed from the time that the securities upon which this Count is brought were sold to the public to the time of the filing of this action.  Less than one year has elapsed from the time when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based to the time of the filing of this action.

## COUNT III

**Against the Securities Act Individual Defendants for
Violations of Section 15 of the Securities Act**

70.     Plaintiff repeats and realleges each and every allegation contained above.

71.     This Count is brought by Plaintiff pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, against the Securities Act Individual Defendants and does not sound in fraud.

72.     Each of the Securities Act Individual Defendants was a control person of Frontier by virtue of his position as a director and/or as senior officer of the Company.  Each of the Securities Act Individual Defendants were control persons of Frontier within the meaning of Section 15 of the Securities Act by reason of their own involvement in the daily business of Frontier and/or as senior executives or directors of Frontier.   The Securities Act Individual Defendants, at the time they held positions with Frontier, were able to, and did, exercise substantial control over the operations of Frontier, including control of the materially false and misleading statements, omissions and course of conduct complained of herein.

73.     Each of the Securities Act Individual Defendants was a culpable participant in the violations of Sections 11 and 12(a)(2) of the Securities Act alleged in Counts I and II above, based on having signed the Offering Materials and having otherwise participated in the process that allowed the Offerings to be successfully completed.

74.     As a result of the foregoing, Plaintiff and the other members of the Class have suffered damages.

## EXCHANGE ACT ALLEGATIONS

75.     In addition to the statements identified in ¶¶ 43-46 above, the Company and the Exchange Act Individual Defendants made numerous, similar statements throughout the Class Period touting Frontier's ability to successfully complete the CTF Acquisition integrate the assets acquired thereby.   The Company and the Exchange Act Individual Defendants also falsely represented that such integration could be accomplished for integration costs of $450 million.

76.     Even after the failed integration, the Company and the Exchange Act Individual Defendants continued to make statements touting the integration as a success, and claiming that the integration had been completed, even though Frontier was far from completing the integration.

77.     The Company and the Exchange Act Individual Defendants made these false statements and misrepresentations either knowing them to be false, or with reckless disregard for the truth of their statements.

78.     The disclosures cited in ¶49 above revealed the truth of these misrepresentations, and caused the price of Frontier securities to decline, causing damage to Plaintiff and the Class.

## PRESUMPTION OF RELIANCE

79.     At all relevant times, the market for Frontier's securities was an efficient market for the following reasons, among others:

A.  Frontier stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

B.  As a regulated issuer, Frontier filed periodic public reports with the SEC and NASDAQ;

C.  Frontier regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations

of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

D. Frontier was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

80.     As a result of the foregoing, the market for Frontier securities promptly digested current information regarding Frontier from all publicly available sources and reflected such information in the price of Frontier securities. Under these circumstances, all purchasers of Frontier securities during the Class Period suffered similar injury through their purchase of Frontier securities at artificially inflated prices and the presumption of reliance applies.

81.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on the Exchange Act Defendants' material omissions. Because this action involves the Exchange Act Defendants' failure to disclose material adverse information regarding Frontier's business and operations as it related to Frontier's largest-ever acquisition—information that the Exchange Act Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the CTF Acquisition, as set forth above, that requirement is satisfied here.

## COUNT IV

**Against Frontier and the Exchange Act Individual Defendants
For Violations of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder**

82.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

83.     During the Class Period, the Company and the Exchange Act Individual Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Frontier securities at artificially inflated prices.

84.     The Company and the Exchange Act Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Frontier securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

85.     The Company and the Exchange Act Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

86.     During the Class Period, the Company and the Exchange Act Individual Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

87.     The Company and the Exchange Act Individual Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.   The Company and the Exchange Act Individual Defendants engaged in this misconduct to conceal Frontier's true condition from the investing public and to support the artificially inflated prices of the Company's securities.

88.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Frontier securities.   Plaintiff and the Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices for Frontier securities had been artificially inflated by the fraudulent course of conduct employed by the Company and the Exchange Act Individual Defendants.

89.     As a direct and proximate result of the wrongful conduct of the Company and the Exchange Act Individual Defendants, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

90.     By virtue of the foregoing, the Company and the Exchange Act Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## <u>COUNT V</u>

**Against the Exchange Act Individual Defendants
For Violations of Section 20(a) of the Exchange Act**

91.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

92.     During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Frontier, and conducted and participated, directly and indirectly, in the conduct of Frontier's business affairs. Because of their senior positions, they knew the adverse non-public information about Frontier's misstatement of income and expenses and false financial statements.

93.     As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Frontier's financial condition and results of operations, and to correct promptly any public statements issued by Frontier which had become materially false or misleading.

94.     Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Frontier disseminated in the marketplace during the Class Period concerning Frontier's results of operations. Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Frontier to engage in the wrongful acts complained of herein.  The Exchange Act Individual Defendants therefore, were "controlling persons" of Frontier within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Frontier securities.

95.     By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Frontier.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the Class, respectfully requests judgment as follows:

A.      Declaring this action to be a plaintiff class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding Plaintiff and other members of the Class damages together with interest thereon;

C.      Awarding Plaintiff and the Class rescission on Count II to the extent they still hold Frontier securities, or if sold, awarding rescissionary damages in accordance with Section 12(a)(2) of the Securities Act;

D.      Awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, experts' fees and other costs and disbursements; and

E.      Awarding Plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

### **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues.


Dated:  October 31, 2017                          Respectfully submitted,

ST. LUCIE COUNTY FIRE DISTRICT
FIREFIGHTERS' PENSION TRUST FUND,
BY THEIR ATTORNEYS

By:   */s/ William H. Narwold*
        William H. Narwold (ct 00133)
        Mathew P. Jasinski (ct 27520)
        **MOTLEY RICE LLC**
        20 Church Street, 17th Floor
        Hartford, Connecticut 06103
        Tel.: (860) 882-1681
        Fax: (860) 882-1682
        E-mail:     bnarwold@motleyrice.com
                        mjasinski@motleyrice.com

Avi Josefson (*pro hac vice* forthcoming)
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 554-1400
Fax: (212) 554-1444
E-mail:      avi@blbglaw.com